Opinion filed April 16, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00041-CV
_____

## NOORDIN BHAMANI AND NOORUDDIN T. "NICK" BHAMANI, Appellants

## V.

## CITIZENS ENTERPRISES, INC. AND MOHAMMAD SIDDIQUE, Appellees

**On Appeal from the 67th District Court**

**Tarrant County, Texas**

**Trial Court Cause No. 067-249329-10**

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a commercial lease dispute between Noordin Bhamani (Bhamani) and his landlord, Citizens Enterprises, Inc. Citizens sued Bhamani for breach of two commercial leases. The first one, signed in 2007, was for the lease of a convenience store with an amendment for additional space: a

liquor store next to the convenience store. The second lease, signed in 2010, was just for the liquor store. Citizens pleaded for $54,235.68 in damages from Bhamani for delinquent rent and other obligations owed by Bhamani. Bhamani, joined by his brother and third-party plaintiff, Nooruddin T. "Nick" Bhamani, counterclaimed and alleged usury, conversion, breach of contract, and other claims against Citizens and Mohammad Siddique. After a bench trial, the trial court entered judgment in favor of Citizens and awarded it $30,000 in damages and $30,000 in attorney's fees from Bhamani; the trial court also entered judgment that the Bhamanis take nothing on their counterclaims.[1] Bhamani asserts six issues on appeal. We affirm.

## I. *Evidence at Trial*

In 2006, Muhammad Yousuf Ahmed executed a lease in which he leased from Citizens a convenience store in Hillsboro. Ahmed assigned that lease to Bhamani, who operated the store; Ahmed never operated the store. Citizens owned the convenience store and the real property, and Siddique was the sole officer, director, and shareholder of Citizens. Bhamani testified that, when he signed the agreement with Ahmed, he paid Citizens $165,000 in cash along with two $5,000 cashier's checks to purchase the goodwill of the convenience store business.[2] Siddique denied that he ever received a $165,000 cash payment and asserted that he only received two $5,000 checks for payment on the first month's rent or a partial payment on store inventory. Later, Bhamani terminated his

---

[1]The trial court, in its conclusions of law, concluded that "Third Party Plaintiff Nooruddin [Nick] Bhamani has no standing to pursue claims against Citizens" as there was no legal relationship between them. We note that, in this appeal, Noordin and Nick Bhamani have not challenged the trial court's ruling on standing, and that issue is not before us. Consequently, we refer to Bhamani as being the appellant (in singular form) in the remainder of our opinion.

[2]No documents reflect a sale of the goodwill of the convenience store business.

assignment, and Ahmed terminated the lease with Citizens; Bhamani then signed a new lease with Citizens (2007 Lease).

Siddique testified that, while the 2007 Lease was in effect, Bhamani approached him with the idea to convert the unused car wash, which was next to the convenience store, into Mojos Liquor; Bhamani wanted to remodel and occupy that space. Bhamani repeatedly asked Siddique to allow construction of Mojos Liquor. Siddique eventually agreed to do so. Bhamani testified that he never signed a contract with anyone for the design or construction of Mojos Liquor and that he had no involvement with its construction; he claimed that he was just a tenant.

Sepehr Parnian, a civil engineer, testified that Bhamani retained him for the design of the exterior of Mojos Liquor, including obtaining the permits to complete the construction. Citizens then introduced a contract between Bhamani and Parnian's company for design and other work done related to the construction of the liquor store and introduced a copy of a $5,000 check, signed by Bhamani, for partial payment for those services.[3] Once the car wash was converted into Mojos Liquor, Bhamani entered into an amendment of the 2007 Lease to reflect the addition of the liquor store.[4]

Citizens asserted that it received $40,000 for partial payment for the construction of the liquor store and Bhamani's ownership of the liquor store business; Bhamani did not own the premises. Bhamani testified that the $40,000 payment was for advanced rent. Nick Bhamani also claimed the $40,000 was part of a $50,000 payment for advanced rent, but he later contradicted that claim when

---

[3]The contract and check were admitted over Bhamani's objection.

[4]Citizens signed the amendment in 2008, and although Bhamani immediately occupied and operated the liquor store after its construction, he did not sign the amendment until April 2009.

3

he said the payment was for ownership of the liquor store business.[5] Citizens denied that Bhamani had ever paid $50,000 for rent and, instead, asserted that he had only paid $40,000 for the construction of the liquor store and ownership of the business.

In 2009, Bhamani struggled to timely make rent payments. Siddique sent Bhamani invoices monthly that outlined the current and past-due rent, current and accrued late fees, and other amounts owed. Siddique testified that Bhamani never disputed the invoices, though Bhamani claimed otherwise and testified that he had objected to some charges. Citizens sent Bhamani a demand letter in November 2009, demanding that Bhamani cure his default and make timely payments for rent. Bhamani failed to do so and continued to have a past-due balance. Citizens wanted the leases to continue, but only if Bhamani made timely rent payments. In October 2010, Citizens sent Bhamani another letter to inform him that Citizens had terminated the 2007 Lease and its amendment because Bhamani had failed to timely pay rent. Citizens did not want to terminate the lease but did so because Bhamani failed to meet his obligations. Citizens located a new tenant for the convenience store, but Bhamani continued to occupy and operate the liquor store with Citizens's permission.

Bhamani and the new tenant met to account for the convenience store's inventory. Siddique insisted that money from the sale of the inventory go into an escrow account for payment of past-due rent and outstanding bills owed by Bhamani. Litigation began in Hill County over the inventory sale; later, Citizens and Bhamani signed a Rule 11 Agreement to create the escrow account and distribute funds to pay for past-due rent and to pay other creditors of Bhamani. As

---

[5]The amendment to the 2007 Lease indicates that, if Citizens sold the property, it would have to execute a separate sales contract that included only the value of the liquor store business. Citizens claimed this was because Bhamani paid for the liquor store business and, thus, would be owed the proceeds from its sale, if such sale occurred.

part of the agreement, Citizens agreed to continue, on a month-to-month basis, to lease Mojos Liquor to Bhamani.

Citizens and Bhamani entered into another lease agreement, in December 2010 (2010 Lease), for a $3,000 per month rental rate. The 2010 Lease contained a "Special Provision" whereby Bhamani agreed to pay the then outstanding $42,250.84 worth of past-due rent still owed from the 2007 Lease and amendment. Bhamani continued to occupy and operate Mojos Liquor for another year until Citizens terminated the agreement in December 2011 because Bhamani failed to pay rent. The final four checks Bhamani wrote for rent payments were returned for insufficient funds.

The trial court found that Bhamani breached the 2007 Lease and the lease amendment by failing to pay rent, carry insurance, pay personal property taxes, pay sales taxes, and pay the fuel supplier and that Citizens incurred damages. Further, the trial court found that Citizens did not materially breach the 2007 Lease or the lease amendment. Bhamani now appeals.

## II. *Issues Presented*

Bhamani asserts, in his first two issues, that Citizens is precluded from recovery under the 2007 Lease because Citizens made demands for unauthorized payments and materially breached that lease first and because the trial court failed to find that Bhamani's breaches caused injury, which precluded recovery for breach of contract. Bhamani argues in his third issue that Citizens converted his inventory. Bhamani next argues that the trial court erred when it (1) admitted evidence not produced in discovery, (2) admitted testimony that contradicted admissions in discovery, and (3) admitted documents that Bhamani did not examine. In his final two issues, Bhamani argues that the trial court abused its discretion in improperly questioning his witnesses and that Citizens's excessive

demand precluded any award of attorney's fees and prejudgment interest to Citizens.

### III. *Standards of Review*

The trial court's findings of fact have the same weight as a jury's verdict; we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards that we use to review the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina*, 881 S.W.2d at 297. We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If we determine that a conclusion of law is erroneous but that the trial court rendered the proper judgment, the error does not require reversal. *Id.*

When we conduct a legal sufficiency review, we review the evidence in a light that supports the disputed finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). We "consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor." *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.) (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)). If more than a scintilla of evidence supports the challenged finding, the no-evidence challenge must fail. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999).

For a factual sufficiency review, we examine all the evidence in the record, both for and against the findings of the trial court. *Ortiz*, 917 S.W.2d at 772. We must consider and weigh all evidence in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). In a bench trial, the trial court

is the sole judge of the witnesses' credibility, and it may believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *Howeth Invs., Inc. v. City of Hedwig Vill.*, 259 S.W.3d 877, 894 (Tex. App.— Houston [1st Dist.] 2008, pet. denied).  If the evidence would enable reasonable minds to differ in their conclusions and the evidence falls within a zone of reasonable disagreement, we do not substitute our judgment.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).  When we consider and weigh the evidence, we will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## IV. *Discussion and Analysis*

We interpret Bhamani's first three issues as arguments that the evidence legally and factually could not support the trial court's findings (1) that Citizens did not materially breach the leases, (2) that Bhamani breached the leases, and (3) that Citizens did not convert Bhamani's funds deposited in the escrow account. We will address his first and second issues together followed by his third issue. We will then address his remaining issues on evidentiary matters and excessive demand doctrine.

### A. Issues One and Two: Bhamani's Breach and Citizens's Performance

Bhamani asserts that there is legally and factually insufficient evidence to support the trial court's finding that he breached the leases.  He also argues that Citizens breached the leases first, as a matter of law, which excused his performance.

#### 1. Elements Three and Four: Breach by Bhamani and Damages to Citizens

Bhamani asserts that he did not materially breach the leases and that there was insufficient evidence that his actions caused injury to Citizens to support an

7

award of $30,000 in damages. "The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff." *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.) (quoting *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 825 (Tex. App.—Fort Worth 2008, no pet.)) (internal quotation marks omitted). First, Bhamani does not dispute the validity of the two leases. Second, Citizens provided the premises to Bhamani, and Bhamani occupied both the convenience store and later the liquor store. Therefore, the relevant questions are whether Bhamani materially breached the leases when he failed to pay rent or make other payments and, if so, whether his breaches caused damages to Citizens. As we explain below, the answer to both questions is "yes."

"The materiality of a breach—the question of whether a party's breach of a contract will render the contract unenforceable—generally presents a dispute for resolution by the trier of fact." *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The trial court found in its findings of fact that Bhamani owed Citizens $30,000 for past-due rental amounts, for late payment penalty charges, and for amounts paid by Citizens to Brilliant Energy LLC for past-due electricity payments. Citizens provided a summary at trial that indicated Bhamani owed $54,235.68; Siddique testified to that amount and said his summary was accurate.

Citizens's invoices from 2009 and 2010 reflected outstanding past-due rent balances owed by Bhamani. Citizens sent monthly invoices to Bhamani, which outlined past-due rent, overdue taxes and insurance, late fees, and other expenses. Citizens introduced invoices indicating that Bhamani owed money to Brilliant Energy for store utilities and that Citizens had paid at least $5,684.73 for those

8

bills. Bhamani was to pay $3,000 a month for rent for Mojos Liquor, and he wrote checks for rent for that property. But four of those checks were returned for insufficient funds. Bhamani also owed $41,265.98 to the fuel supplier, Victron Energy. Bhamani owed more than $10,000 for overdue taxes on the stores. We hold that this evidence was legally sufficient to prove Bhamani materially breached the leases and caused damages to Citizens.

Bhamani claims he was not given proper credit for payments he made. First, he argues that he was not given credit for $40,000 in rent payments that he made. Siddique testified that he received $40,000 for construction costs and for Bhamani's ownership of Mojos Liquor. The amendment to the 2007 Lease corroborates Siddique's claim as to the $40,000 payment. Second, Bhamani claims he was not given credit for the inventory. A suit was filed by Bhamani against Citizens in Hill County; that suit arose out of disputes concerning the two stores. A Rule 11 agreement ended that litigation and provided for an escrow account for the proceeds from the sale of the convenience store's inventory; Citizens leased the convenience store and sold its inventory to another lessee. The inventory sale proceeds of $82,286.91 were placed into the escrow account. Bhamani agreed that $20,000 was paid to Citizens for past-due rent; $20,000 was sent to the Texas Comptroller to partially satisfy his tax obligations; and $41,265.98 was paid to the fuel supplier, Victron Energy, for unpaid fuel charges.

In the 2010 Lease, Bhamani even agreed to pay the outstanding $42,250.84 worth of past-due rent still owed from the prior lease. Citizens alleged breach of contract with damages of $54,235.68 and adduced evidence of (1) past-due rent on the 2007 Lease and amendment, (2) past-due rent on the 2010 Lease, (3) late fees for past-due rent on both leases, (4) past-due electricity payments, and (5) past-due

real property taxes,[6] which totaled more than $30,000. We hold there was legally and factually sufficient evidence that Bhamani breached the leases and that Citizens incurred damages; the trial court did not err when it awarded $30,000 in damages to Citizens.

## 2. *Elements One and Two: Valid Lease and Performance by Citizens*

Bhamani maintains he was excused from performance because Citizens materially breached the leases before Bhamani did when Citizens failed to properly credit payments for rent, refused to assign a fuel supply contract to him, attempted to charge him too much for rent, charged improperly calculated ten percent late fees, and improperly charged for property insurance—all of which failed to comply with the terms of the leases. Contract law outlines "that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipepline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).

There are five factors to review to determine if a failure to perform is material: (1) whether the injured party fails to receive the benefit of the bargain; (2) whether the injured party can be compensated for the benefit deprived; (3) whether the injured party will suffer a forfeiture; (4) whether the party that failed to perform can cure; and (5) whether the party that failed to perform acted in good faith and fair dealing. *Id.* at 199 (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)). Only a material breach by Citizens would excuse Bhamani's performance; this type of excuse is an affirmative defense, which Bhamani had to plead and prove. *See id.* at 196–97; *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, pet. dism'd). When an appellant complains of the legal sufficiency of the evidence to

---

[6]Bhamani, in accordance with the terms of the 2007 Lease and amendment, became responsible for real property taxes in April 2010 and thereafter when Domino's Pizza vacated the premises on March 31, 2010.

support an adverse finding on a matter on which he had the burden of proof, he must show the evidence establishes, as a matter of law, all vital facts to support every element of his defense. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Bhamani argues that Citizens's failure to properly credit rent payments of $40,000 constituted a material breach of the leases. Siddique testified that the $40,000 was for the construction and ownership of the Mojos Liquor business. Although Bhamani claimed he paid $40,000 for advanced rent and his brother claimed that $50,000 was paid for advanced rent, the factfinder could have disbelieved them. As previously explained, the evidence was legally and factually sufficient to support the finding of the trial court that Bhamani did not pay $40,000 to Citizens as future rent payments owing under the terms of the lease amendment.

Bhamani claims that Citizens committed a material breach because a fuel contract was never assigned to him. Siddique testified that Bhamani never disputed the failure to assign the fuel contract. Siddique said he would have assigned the contract to Bhamani had the fuel supplier agreed, but there is no evidence that the fuel supplier had agreed to the assignment. Nothing in the record indicates that the failure to assign the fuel contract to Bhamani constituted a material breach. Again, Bhamani failed to meet his burden to show a material breach by Citizens.

Bhamani also claims that he was charged too much rent because he had not yet signed the lease amendment for the liquor store space. Citizens signed the lease amendment in 2008; Bhamani immediately occupied and operated the liquor store after its construction, but he did not sign the amendment until April 2009. Citizens provided the additional space, and Bhamani occupied it. Citizens performed, sought payment for the increased rent for that space, and did not breach the lease amendment.

Bhamani also argues that Citizens materially breached the leases when it attempted to charge him for property insurance premiums and charged him late fees that were not permitted under the 2007 Lease. Even if we assume these claims by Bhamani evidenced material breaches by Citizens, which we do not hold, once a party "materially breaches a contract, the nonbreaching party is forced to elect between two courses of action, i.e., continuing performance or ceasing performance." *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 25 (Tex. App.—Houston [14th Dist.] 2006, no pet.). A "party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006) (quoting *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982)).

Bhamani, beginning in 2009, struggled to timely make rent payments and had a past-due balance. Citizens's invoices and Siddique's testimony catalogued the amounts Bhamani owed. Even though Bhamani asserts the invoices were incorrect and had improper charges or fees included, he still remained in possession of the leased premises; continued to sell fuel; and continued to miss rent payments, tax payments, fuel supply payments, and utility payments. Siddique testified that he thought the 2007 Lease allowed him to charge Bhamani the insurance charges and late fees, as outlined in the invoices, but he conceded he made errors. Siddique received payments from Bhamani sporadically, which made it difficult to keep track of payments made and increased his work. Bhamani also made random cash deposits into Citizens's bank account, despite the requirement that payments be made in full and delivered to a specific address on the first of each month.

Bhamani never presented any documents to show he had objected to the charges or pointed out that the invoices were incorrect, and he never adduced evidence that he had to pay the late fees or property insurance. Furthermore, he

12

conceded that he owed rent, taxes, and fuel supply charges when he signed the Rule 11 Agreement and that he owed more than $42,000 in rent when he signed the 2010 Lease. More importantly, Bhamani continued to occupy and use the premises and waived any claim for excuse of performance when he continued to accept the benefits of the leases and continued to occupy both stores and operate his businesses. *Long Trusts*, 222 S.W.3d at 415.

We have reviewed the record and hold that the trial court did not err when it found that Bhamani had breached the leases; there was legally and factually sufficient evidence to show that he failed to pay rent, personal property and sales taxes, utilities, personal property insurance, and fuel charges and that Citizens incurred damages. Bhamani also failed to establish, as a matter of law, his affirmative defense of excuse of performance because, even if we assume Citizens had materially breached the leases, which we do not hold, Bhamani continued to occupy the premises and operate his businesses without timely paying rent and other obligations. We overrule his first and second issues.

### B. Issue Three: Conversion

Bhamani argues in his third issue that Citizens is liable for conversion for the sale of Bhamani's inventory in the convenience store. "Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Henson v. Reddin*, 358 S.W.3d 428, 434 (Tex. App.—Fort Worth 2012, no pet.). As part of the resolution of litigation in Hill County, the parties agreed to place the proceeds from the sale of the inventory in the convenience store, totaling $82,286.91, into an escrow account to pay for part of the delinquent rent and other obligations incurred by Bhamani from his operation of the stores. When he signed the Rule 11 agreement, Bhamani explicitly authorized the funds to be placed into an escrow account and distributed according to the agreement; thus,

13

there is no "unauthorized and wrongful" control. Bhamani did not meet his burden on his claim for conversion, and we overrule his third issue.

## C. Issue Four: Evidentiary Rulings

Bhamani asserts that the trial court abused its discretion in three evidentiary rulings. We review a trial court's evidentiary rulings for an abuse of discretion. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999). We must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We must uphold the trial court's evidentiary ruling if there is any legitimate basis in the record for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

### 1. Admission of Parnian Contract and Bhamani Check

Bhamani complains that his contract with Parnian was inadmissible because it was not produced in discovery. Bhamani and his brother both testified that they had nothing to do with the construction of Mojos Liquor. Citizens called Parnian to testify that Bhamani and his brother had hired Parnian to design the exterior of the store and to get approval for its construction. Bhamani and Parnian entered into a written contract. Bhamani also gave Parnian a $5,000 check for partial payment for the project.[7] The trial court admitted the contract and the check over Bhamani's objection.

Rule 193.6 provides that a party may not introduce evidence it has not provided in discovery unless there was good cause for the failure to timely supplement or the failure to supplement will not unfairly surprise or prejudice the other party. TEX. R. CIV. P. 193.6(a). The rule is intended to promote responsible

___

[7]Neither Citizens nor Siddique was a party to the contract.

14

assessment of settlement and prevent trial by ambush. *O'Dell v. Wright*, 320 S.W.3d 505, 511 (Tex. App.—Fort Worth 2010, pet. denied). The party that seeks to introduce the evidence carries the burden to establish good cause, lack of unfair surprise, or lack of unfair prejudice. *Id.* Such a determination is within the discretion of the trial court. *Id.* However, a finding of good cause, lack of unfair surprise, or lack of unfair prejudice must be supported by the record. *Id.*

Citizens, who received the contract and the check from Parnian, did not timely supplement its discovery. But Citizens had requested Bhamani to produce the contract in discovery, if one existed, and Bhamani did not produce the contract or the check. Although Citizens failed to supplement discovery, it established there was no unfair surprise or unfair prejudice to Bhamani. Bhamani put the matter at issue when he denied he had contracted with Parnian, denied the existence of the contract, and denied he had written the check.

### 2. *Admission of Evidence that Allegedly Contradicted Admissions*

Bhamani next claims that the trial court erred when it admitted evidence that Bhamani claimed contradicted admissions by Citizens. "An admission once admitted . . . is a judicial admission, and a party may not then introduce testimony to controvert it." *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). However, a party relying on "judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted." *Id.* Bhamani claimed that Citizens's admissions established what payments Citizens received from Bhamani and established that he paid $40,000 to Citizens to construct Mojos Liquor. All trial exhibits were pre-admitted by agreement of the parties. Bhamani had to object to the spreadsheets or this testimony, when they were offered, if he thought they contradicted the admissions. *See id.* Bhamani failed to preserve error and waived it. *Id.*; TEX. R. APP. P. 33.1. But even if he had preserved error, Siddique said he thought his

15

spreadsheets were accurate but admitted they may have had errors. Citizens's counsel asked this question, "Mr. Siddique, relating to the payments you received from [Bhamani] for the construction of Mojos, number one, how much did you receive?" Siddique responded, "40,000." Siddique's testimony was consistent with Citizens's prior admissions.

### 3. Judicial Notice of Documents

Bhamani argues, in his third evidentiary complaint, that the trial court erred when it took judicial notice of documents produced in camera. These documents are not part of the record, and no mention of them occurs in the findings of fact or conclusions of law or in the judgment in this case. In order to preserve error, a party must object on the record and get a ruling. TEX. R. APP. P. 33.1(a)(1). Citizens asked the trial court to take judicial notice of records that the Texas Alcoholic Beverage Commission sent to the trial court for in camera inspection. Bhamani never objected and preserved nothing for review. We overrule Bhamani's fourth issue.

### D. Issue Five: Trial Court's Witness Questioning

Bhamani asserts in his fifth issue that the trial court erred in questioning witnesses in a "frequent, aggressive, and inappropriate" manner. A trial court's right to examine witnesses in a bench trial is well established. *In re Estate of Vigen*, 970 S.W.2d 597, 600 (Tex. App.—Corpus Christi 1998, no pet.). Although a trial judge should not act as an advocate, a judge may ask material questions of a witness to elicit evidence not otherwise brought out. *See Born v. Virginia City Dance Hall & Saloon*, 857 S.W.2d 951, 957 (Tex. App.—Houston [14th Dist.] 1993, writ denied). A trial judge may question witnesses "in order to clarify an issue the trial judge must decide in fulfilling his fact-finding role." *In re R.P.*, 37 S.W.3d 76, 79 (Tex. App.—San Antonio 2000, no pet.). We review the trial court's questioning of a witness for an abuse of discretion. *Moreno v. Reliable*

*Insulation, Inc.*, 217 S.W.3d 769, 772 (Tex. App.—Dallas 2007, no pet.); *Cason v. Taylor*, 51 S.W.3d 397, 405 (Tex. App.—Waco 2001, no pet.); *see Born*, 857 S.W.2d at 957. A party must object to a trial court's questioning of witnesses or else it waives the issue on appeal. *Vigen*, 970 S.W.2d at 600. Bhamani failed to object to the trial judge's questioning of witnesses and has waived the issue. *See id.*; *see also* TEX. R. APP. P. 33.1. Even if Bhamani had preserved error, the trial court did not abuse its discretion because its questioning was limited to clarification of the issues that it had to decide as factfinder. We overrule Bhamani's fifth issue.

*E. Issue Six: Excessive Demand Allegation*

Bhamani argues in his final issue that Citizens may not recover attorney's fees or prejudgment interest because its demands were excessive. A demand is excessive if the claimant acts unreasonably or in bad faith. *See Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981); *Staff Indus., Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 548 (Tex. App.—Corpus Christi 1993, no writ). The dispositive inquiry on excessive demand is whether the claimant acted unreasonably or in bad faith. *Findlay*, 611 S.W.2d at 58; *Staff Indus.*, 846 S.W.2d at 548. Bhamani asserts that Citizens "demanded payment of more than $169,000 but recovered only $30,000." Having searched the record, we find that Citizens's pleadings demanded $54,235.68; at trial, a spreadsheet was used by Citizens to outline how it calculated its demanded payment. Bhamani's reference to a demand "of more than $169,000" comes from another spreadsheet introduced at trial, but there is no evidence that Citizens demanded that amount prior to trial or during trial. The trial court awarded $30,000 in damages, which was supported by legally and factually sufficient evidence. Citizens's demand for $54,235.68 with adduced evidence of more than $30,000 in damages for (1) past-due rent for the 2007 Lease and amendment, (2) past-due rent for the 2010 Lease, (3) late fees on both leases,

17

(4) past-due electricity payments, and (5) past-due real property tax payments demonstrates that the demand was not excessive, unreasonable, or made in bad faith. We overrule Bhamani's final issue.

V. <em>This Court's Ruling</em>

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


April 16, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.